**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Defense of Animals, a non-profit organization, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>United States Government, Department of Agriculture, et al.,<br><br>    Defendants. | No. 05-CV-2754-PHX-FJM<br><br>**ORDER** |

**I.**

On July 19, 2005, defendant United States Forest Service issued a bid solicitation for the removal of horses from the Apache-Sitgreaves National Forest ("ASNF"). Complaint, Exhibit D. On September 9, 2005, plaintiffs filed this action seeking a Temporary Restraining Order ("TRO") and Preliminary Injunction to prevent defendants from removing any horses from the ASNF, or awarding a bid for the capture and removal of any horses from the ASNF, unless defendants have complied with the National Environmental Policy Act ("NEPA"), the Wild Free-Roaming Horses and Burros Act ("Wild Horses Act") and the Administrative Procedures Act ("APA"). We issued a TRO enjoining defendants from rounding up, removing, or awarding a bid for the capture and removal of horses from the ASNF (doc. 5). Subsequently, defendants lost their funding for the bid solicitation, and accordingly, it is no longer viable. Response at 2.

1  We now have before us plaintiffs' application for a preliminary injunction (doc. 1), 2 defendants' Response (doc. 13), and plaintiffs' Reply (doc. 16). We also have before us 3 defendants' supplemental filing (doc. 17), plaintiff's supplemental filing (doc. 18), and 4 plaintiff's motion to strike defendants' supplemental filing (doc. 20), all of which were filed 5 the day of the preliminary injunction hearing.

**II.**

7 Defendants argue that the application for a preliminary injunction is moot because 8 the July 19, 2005 bid solicitation is no longer viable. Response at 2-4. However, an 9 action for a preliminary injunction will not become moot "merely because the conduct 10 complained of was terminated, *if there is a possibility of recurrence*, since otherwise the 11 defendant's [sic] would be free to return to [their] old ways," Fed. Trade Comm'n v. 12 Affordable Media, LLC, 179 F.3d 1228, 1237 (9th Cir. 1999) (alteration in original) 13 (citation omitted). To establish mootness, defendants would need to show that 14 "subsequent events made it absolutely clear that the allegedly wrongful behavior could 15 not reasonably be expected to recur." United States v. Concentrated Phosphate Export 16 Ass'n, 393 U.S. 199, 203, 89 S. Ct. 361, 364 (1968). This action for a preliminary 17 injunction is not moot because there is a possibility of recurrence; defendants are 18 contemplating another bid solicitation under the 2006 budget. Response at 2.

19 Defendants also argue that the application for a preliminary injunction is not ripe 20 because defendants have not issued another bid solicitation. Response at 3. The rationale 21 of the ripeness doctrine is to "prevent the courts, through avoidance of premature 22 adjudication, from entangling themselves in abstract disagreements over administrative 23 policies, and also to protect the agencies from judicial interference until an administrative 24 decision has been formalized and its effects felt in a concrete way by the challenging 25 parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 1515 26 (1967). Defendants' argument fails because plaintiffs' claims are not based upon an 27 abstract disagreement over policy but the very real concrete dispute over the identity of 28 the horses, the applicability of multiple statutes and the defendants' conceded intent in

1  soliciting bids.  This action is thus ripe for adjudication.  See Porter v. Jones, 319 F.3d
2  483, 490-91 (9th Cir. 2003).

### III.

4  A preliminary injunction should only be granted if the moving party "demonstrates
5  that it is likely to succeed on the merits and may suffer irreparable injury, or that serious
6  questions exist on the merits and the balance of hardships tips in its favor."  Self-
7  Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 913
8  (9th Cir. 1995).  "These two formulations represent two points on a sliding scale in which
9  the required degree of irreparable harm increases as the probability of success decreases."
10 Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985).
11 Therefore, "[w]here a party can show a strong chance of success on the merits, he need
12 show only a possibility of irreparable harm.  Where, on the other hand, a party can show
13 only that serious questions are raised, he must show that the balance of hardships tips
14 sharply in his favor."  Bernard v. Air Line Pilots Ass'n, Int'l, AFL-CIO, 873 F.2d 213, 217
15 (9th Cir. 1989).

### A.

17 Plaintiffs raise at least serious questions as to the legality of defendants' actions.
18 Plaintiffs argue that defendants violated NEPA because the removal of wild horses will
19 significantly affect the human environment, and defendants failed to properly consider the
20 impact, and failed to issue an Environmental Impact Statement ("EIS") or a statement of
21 reasons as to why an EIS is unnecessary.  Complaint at 9-11.  Plaintiffs argue that
22 defendants violated the Wild Horses Act because they attempted to remove the wild
23 horses, failed to properly investigate the status of the horses, failed to keep an inventory
24 of the horses, failed to establish an advisory committee with regard to the horses, and
25 failed to hold a public hearing prior to the attempt to use motorized vehicles to remove
26 the horses.  Complaint at 6-9.  Plaintiffs argue that defendants violated the APA because
27 they acted arbitrarily and capriciously by failing to conduct a full investigation into the
28

1  effects of the removal of the horses, and failing to comply with NEPA and the Wild
2  Horses Act. Complaint at 11.
3        In response to all of these allegations, defendants merely argue that the horses at
4  issues are not "wild horses."  The Wild Horses Act defines "wild free-roaming horses and
5  burros" as "all unbranded and unclaimed horses and burros on public lands of the United
6  States."  16 U.S.C. § 1332(b).  Defendants set forth a summary table showing that
7  between 1992 and 2004, there were no documented wild horses in the Heber Wild Horse
8  Territory.  Declaration of Debra Bumpus, Exhibit 1.  Plaintiffs' motion to strike this
9  document is denied as moot because the evidentiary value of the table is de
10 minimis–defendants fail to explain how these figures were derived (doc. 20).  Defendants
11 also argue that the horses at issue are domesticated and "strayed onto the forest after the
12 Rodeo-Chediski Fire in 2002."  Complaint, Exhibit C at 1.  However, plaintiffs set forth
13 six affidavits by residents of the ASNF area, who have seen unbranded "wild horses" in
14 the ASNF area before and after the Rodeo-Chediski fire.  Application for TRO, Exhibits
15 B-G.
16       Defendants further argue that this evidence is insufficient, because plaintiffs must
17 also show that the horses are unclaimed.  Response at 3.  However, defendants fail to
18 argue that the horses have been claimed, and to the contrary, they state that they "notified
19 the White Mountain Apache Tribal Chairman and Tribal Attorneys of a Notice of
20 Impoundment Action and g[ave] tribal members more than 30 days to come gather their
21 horses [and] [n]o horse owners [came] forward."  Complaint, Exhibit C at 1.  Moreover,
22 plaintiffs argue that they are prevented from setting forth more detailed evidence as to
23 claims because defendants failed to properly inventory the horses pursuant to the
24 requirements of the Wild Horses Act.  Application for TRO at 15; Reply at 7.
25       Defendants' arguments, and defendants' counsel's statements during the
26 preliminary injunction hearing, evidence defendants' failure to have thoroughly
27
28

- 4 -

considered the status of the horses in the ASNF before soliciting a bid for their removal.[1] Accordingly, we conclude that plaintiffs have raised serious questions as to the legality of defendants' actions.

**B.**

The removal of horses prior to final adjudication would cause plaintiffs irreparable harm. Defendants state that they are contemplating removing the horses if a preliminary injunction is not granted, and plaintiffs' argue that once removed, the horses will become extinct in the ASNF.[2] <u>Application for Temporary Restraining Order</u> at 17. In contrast, defendants conceded at the preliminary injunction hearing that a preliminary injunction prohibiting horse removal would not cause the defendants any hardship. Accordingly, the balance of hardships tips sharply in plaintiffs' favor.

**IV.**

**IT IS ORDERED GRANTING** plaintiffs' application for a preliminary injunction and enjoining defendants from awarding a bid for the capture and removal of the allegedly wild horses from within the Apache-Sitgreaves National Forest, and from rounding up and removing the allegedly wild horses from within the Apache-Sitgreaves National Forest. This order is in effect until final judgment is entered by way of motion for summary judgment or trial (doc. 1).

---

[1] Defendants argue that pursuant to the Wild Horses Act, they need only census horses in the Heber Wild Horse Territory, and not the entire ASNF. However, 36 C.F.R. § 222.25 requires the surveillance and protection of wild horses on national forest lands, other public lands, and lands of other ownership or jurisdiction.

[2] Defendants argue that plaintiffs will not suffer irreparable harm if the preliminary injunction is denied because defendants have not issued a new bid solicitation, and they will warn the court and the plaintiffs before issuing a new bid solicitation. We resolved this matter with regard to the mootness analysis above. Moreover, plaintiffs should not be forced to monitor defendants' activity to ensure that they have complied with their promise of pre-removal notification.

1   **IT IS FURTHER ORDERED DENYING** plaintiffs' motion to strike as moot (doc. 20).

DATED this 13th day of December, 2005.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge